HARDAWAY CONSTRUCTORS, INC. (Successor and Assign to B. F. Diamond Construction Company, Inc.) v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

No. 8510SC830

(Filed 15 April 1986)

1. **Highways and Cartways § 9— construction of barrier rails—method of construction—conclusion unsupported by findings of fact**

   The trial court's findings of fact were insufficient to support its conclusion that the parties' construction contract contemplated that the only acceptable method of construction of barrier rails was by the use of a fixed form, since defendant's "Standard Specifications for Roads and Structures" did not require fixed form construction, and other provisions of the contract, which were detailed and specific, did not require fixed form construction or exclude slip forming of the barriers, the method which plaintiff used.

2. **Highways and Cartways § 9— construction of barrier rails—method of construction not spelled out—method agreed to by defendant—reduction in payment improper**

   Section 108-5 of defendant's "Standard Specifications for Roads and Structures" applied to the parties' course of dealings in the construction of bridges and barrier rails so as to entitle plaintiff to funds withheld by defendant where plaintiff sought to use the slip forming rather than the fixed form method of construction for the barriers; defendant agreed but required plaintiff to sign a supplemental agreement reducing the amount of payment by $7 per lineal foot; plaintiff signed the agreement under protest and completed the job to defendant's satisfaction; section 108-5 provided for instances where the contract did not specifically require a method of construction, as in this case; and the section provided that "No change will be made in basis of payment for the construction items involved."

   Chief Judge HEDRICK dissenting.

APPEAL by defendant from *Battle, Gordon, Judge.* Judgment entered 5 June 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 13 January 1986.

This is a civil action instituted by plaintiff Hardaway Constructors, Inc. against defendant, North Carolina Department of Transportation. Plaintiff is a corporation organized under the laws of Georgia and the assignee of B. F. Diamond Construction Company, Inc. (B. F. Diamond), which has been merged into plaintiff (hereinafter referred to collectively as plaintiff). Defendant is a public agency with the statutory authorization to administer contracts for the construction of highways and bridges.

In April 1980, B. F. Diamond Construction Co., Inc., was awarded a contract by defendant to build dual bridges on U.S. 17 over Lake Drummond Canal at South Mills, North Carolina, Project No. 8.1112203 in Camden County. The terms of the contract included, *inter alia*, that B. F. Diamond was to build 8,537.8 feet of concrete barrier rail at the price of forty-two dollars ($42.00) per lineal foot. On 14 August 1981, B. F. Diamond informed defendant of its intention to subcontract the construction of the barrier rail to A. C. Auckerman and that slip-forming would be used as the method of constructing the barrier rail. Defendant refused to approve the use of slip-forming as a method of construction unless B. F. Diamond executed a supplemental agreement with a reduction of seven dollars ($7.00) per lineal foot equaling a total reduction of $59,764.60 from the contract price. B. F. Diamond executed the supplemental agreement under protest and attached a letter expressly reserving its objections to the deduction of seven dollars ($7.00) per lineal foot. Slip-forming was used as the method of constructing the barrier rail which was completed in June 1982. Thereafter, defendant accepted the 8,537.8 lineal feet of barrier, but withheld seven dollars ($7.00) per lineal foot.

On 4 January 1983, B. F. Diamond in accordance with the terms and conditions of the contract filed a written and verified claim pursuant to G.S. 136-29. Defendant denied B. F. Diamond's claim. On 30 December 1983, plaintiff, as successor and assign to B. F. Diamond, instituted this action by the filing of its complaint.

Plaintiff's complaint stated three claims for relief. The first claim for relief sought to recover the $59,764.60 deducted from the contract price pursuant to the supplemental agreement executed under protest. In plaintiff's second claim for relief plaintiff sought to recover $11,653.00 for clearing and grubbing of land which was performed. The third claim for relief sought $71,417.60 for breach of contract in the alternative should the court determine that plaintiff was not entitled to proceed pursuant to G.S. 136-29 on its first and second claims for relief. Defendant filed a motion to dismiss this action for failure to state a claim upon which relief may be granted. Rule 12(b)(6), N.C. Rules Civ. P. Defendant also filed a motion to dismiss this action for lack of subject matter jurisdiction. Rule 12(b)(1), N.C. Rules Civ. P. In an order filed 23 January 1984, the court denied defendant's motions to dismiss as to plaintiff's first and second claims for relief.

However, the court granted defendant's motions to dismiss as to plaintiff's third claim for relief. Defendant, in his amended answer, asserted two defenses to plaintiff's claims. Defendant's first defense included general denials of the allegations of plaintiff's complaint and specific denials of all allegations that defendant had any contractual relationship with Hardaway Constructors, Inc. Defendant's second defense included, *inter alia*, the averment that the plans and specifications showed that fixed forms were to be used in the construction of the barrier rails; and that B. F. Diamond could have proceeded to use fixed forms, but that it elected to voluntarily enter into a supplemental agreement with defendant to use slip-forming at the reduced price. Defendant also averred that the clearing and grubbing, which plaintiff sought recovery for, were not separate pay items. This cause of action was tried before Judge Battle without a jury. The parties submitted a set of stipulated facts, a copy of their contract and a copy of the Standard Specifications for Roads and Structures dated 1 July 1978. In a judgment filed 5 June 1985, the court concluded, *inter alia*, as a matter of law that defendant was fully authorized to require a reduction in price when the construction method for the barrier rails was changed at plaintiff's request from fixed forms as contemplated by the standard specifications and special provisions. The court denied all claims for relief set forth in plaintiff's complaint. Plaintiff appeals.

*Sanford, Adams, McCullough & Beard, by Charles C. Meeker, for plaintiff appellant.*

*Attorney General Rufus Edmisten, by Assistant Attorney General Evelyn M. Coman, for defendant North Carolina Department of Transportation.*

JOHNSON, Judge.

[1]   Plaintiff's appeal does not bring forward its second Assignment of Error with respect to that portion of the judgment denying its second claim for relief. We deem that plaintiff's second Assignment of Error is abandoned. Rule 28(a), N.C. Rules App. P. Plaintiff's first and third Assignments of Error are both with respect to plaintiff's first cause of action. The first question presented for our review by way of plaintiff's appeal is whether the trial court erred in its conclusion of law that the Standard

Specifications and Special Provisions incorporated by the parties contemplated the construction of barrier rails by the use of a fixed form.

When the trial judge sits as the trier of fact the judgment rendered will not be disturbed on the theory that the evidence did not support his findings if there is competent evidence to support the judgment. *Whitaker v. Earnhardt*, 289 N.C. 260, 221 S.E. 2d 316 (1976). However, the record may clearly reveal that the court erred in its legal conclusions from the facts. *H. V. Allen Co. v. Quip-Matic, Inc.*, 47 N.C. App. 40, 266 S.E. 2d 768, *cert. denied*, 301 N.C. 85, 273 S.E. 2d 298 (1980).

The conclusions of law which plaintiff excepts to are as follows:

Based upon the foregoing finds (sic) of fact, the Court concludes as a matter of law that the Standard Specifications and Special Provisions incorporated by the parties in their contract control the disposition of this controversy; that these documents contemplated the construction of barrier rails by the use of fixed form; . . . that under the specifications the DOT [defendant] was fully authorized to require a reduction in price when the construction method for the barrier rails was to be changed at the request of Hardaway.

The court, pursuant to the parties' stipulation, found as fact the following:

12. The contract specifications for this project include the 'North Carolina Department of Transportation — Raleigh — Standard Specifications for Roads and Structures,' dated July 1, 1978 ('Standard Specifications') as well as all special provisions in the document entitled, 'Contract and Contract Bonds for Project No. 8.1112203, F75-5(13)' ('Contract').

The two sections of the contract, which the court quotes in its pertinent findings of fact are section 108-5 of the Standard Specifications and the special provisions section of the contract entitled "Concrete Barrier Rails." Neither section 108-5 nor the special provisions quoted by the trial court state that cast-in-place forms are required as a method of constructing the barrier rails. The trial court found as fact the following:

14. The plans and specifications do not state anywhere that 'slip-forming of the concrete barriers will not be permitted.' The plans and specifications do not state anywhere that 'slip-forming of the concrete barrier rails will only be permitted at a $7.00 per lineal foot credit to the North Carolina Department of Transportation.'

Our review of the entire language of the contract reveals that the contract language was explicit when the drafters intended that no other methods were to be used in other phases of the construction project. For example, subsection 1 of the section entitled "Reinforced Concrete Deck Slab" states "Plans for the concrete deck slab are detailed for the use of metal stay-in-place forms; however, the contractor shall have the option of constructing a cast-in-place slab using removable forms, or a cast-in-place slab using precast prestressed concrete panels in the prestressed concrete girder spans." An even more convincing example of the way this document was drafted may be found in subsection 3 entitled "Construction methods." "Curing methods for the concrete will perform to the standard specifications except when using prestressed concrete panels the cast-in-place concrete shall be cured by the water method as specified in subarticle 420-17(b) of the standard specifications. *No other methods will be allowed.*" (Emphasis added.) The language we are concerned with in the section entitled "Concrete Barrier Rails" is as follows:

The quantity, measured as described above, will be paid for at the contract unit price per lineal foot bid for concrete barrier rail, which price and payment shall be full compensation for all materials, admixtures, *forms*, form lining, false work, curing, surface finish, tools, labor, equipment and incidentals necessary to complete the item.

*At the Contractor's option* he may line the inside of *his forms* the roadway face of the barrier rail with an absorbent material that meets the approval of the Head of Structure Design, *or* he may use forms with no lining and afterwards, the roadway face of the barrier rail with an absorbent material that meets the approval of the Head of Structure Design, or he may use forms with no lining and afterwards, the roadway face of the barrier rails shall be given a Class II surface finish in accordance with the specifications.

> *In the event* the Contractor uses a lining in his forms for the roadway face of the barrier rail, and after removing the forms, the surface on the roadway face of the barrier rail is not acceptable in the opinion of the Engineer, the Contractor will be required to give this surface a Class 2 surface finish in accordance with the specifications.

(Emphasis added.) These excerpts from the contract, recited by the court in its findings of fact, refer to "Forms" only. There is no specification of fixed forms. The trial court may have intended to find as fact that "forms" referred to fixed forms. However, in the absence of such a finding, our review of the findings of fact do not disclose any support for the court's conclusion of law that the contract contemplated fixed forms as the only acceptable method of construction. The contract does not specify fixed forms as the only method of construction. A mere recitation of the contractual terms in the findings of fact is insufficient to support the court's conclusion of law that the contract contemplated the use of fixed forms.

[2]   The court's findings of fact contain an excerpt from section 108-5 as follows:

> When the contract specifies that the construction be performed by the use of certain methods and equipment, such methods and equipment shall be used unless others are authorized by the Engineer. If the contractor desires to use a method or type of equipment other than those specified in the contract, he may request authority from the engineer to do so. The request shall be in writing and shall include a full description of the methods and equipment proposed to be used and an explanation of the reasons for desiring to make the change. If approval is given it will be fully responsible for producing construction work in conformity with contract requirements. If, after trial use of the substituted methods or equipment, the Engineer determines that the work produced does not meet contract requirements, the Contractor shall discontinue the use of the substitute method or equipment and shall complete the remaining construction with the specified methods and equipment. The contractor shall remove the unsatisfactory work and replace it with work of specified quality, or take such other corrective action as the

Hardaway Constructors, Inc.. v. N. C. Dept. of Transportation

engineer may direct. *No change will be made in basis of payment for the construction items involved* nor in the completion date as a result of authorizing a change in methods or equipment under these provisions.

(Emphasis added.) We deem that section 108-5 is controlling in the case *sub judice*. Section 108-5 provides for instances where the contract has not specifically required a method of construction, which is the situation that we must address.

Slip-forming as a method of construction is not specified in the contract. Plaintiff indicated its desire to use slip-forming to defendant. Defendant approved plaintiff's use of slip-forming as a method of construction. The work done by plaintiff met the contract requirement and as the trial court found as fact the work was done to "the satisfaction of all." Therefore, the supplemental agreement that changed the basis of payment, which plaintiff executed under protest, is at variance with the terms of the agreement. Section 108-5 unequivocally states that "No change will be made in basis of payment for the construction items involved." The contract contemplates payment "at the contract unit price [$42.00] per lineal foot bid for Concrete Barrier Rail, which price and payment shall be full compensation for all . . . forms." It is apparent that the end result of the contract measured by lineal feet is the basis of payment upon which the contract is based. Plaintiff fulfilled the pertinent terms of the contract by erecting 8,537.8 feet of concrete barrier rail and is entitled to the contract price of forty-two dollars ($42.00) per lineal foot of concrete barrier rail. Plaintiff is entitled to recover the $59,764.60 deducted by defendant as a credit pursuant to the supplemental agreement. For the aforementioned reasons the judgment must be reversed and the matter remanded to the trial court for entry of judgment for plaintiff not inconsistent with this opinion.

Reversed and remanded.

Judge PHILLIPS concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

I dissent. I agree with the majority's holding that the trial court's findings of fact do not support the trial court's conclusion of law construing the construction contract to require the use of fixed form construction methods. I do not agree that the trial court's findings of fact compel this Court to order judgment for plaintiff.

The majority states, "Section 108-5 unequivocally states that 'No change will be made in basis of payment for the construction items involved.'" Section 108-5 is not so broad. The section specifies that "[n]o change will be made in basis of payment for construction items involved nor in the completion date as a result of authorizing a change in methods or equipment under these provisions." It is not clear from the trial court's order whether the changes in construction methods authorized in the contract modification resulted in a change in the quality of the barrier rail called for in the contract. I am unable to determine from the trial court's order whether the Department of Transportation accepted the slip formed barrier rails only because of the contract modification. I would therefore reverse and remand for further findings of fact.